BRISTOL BANK AND TRUST COMPANY *vs.* FRANK T. BRODERICK ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued November 5th, 1936—decided January 8th, 1937.

*Daniel E. O'Keefe,* of New York, with whom, on the brief, was *Joseph M. Donovan,* for the appellants (defendants).

*Frederick W. Beach,* with whom, on the brief, was *S. Russell Mink,* for the appellee (plaintiff).

BANKS, J. On March 31st, 1930, Mary Broderick gave to the Bristol Trust Company her note for $6000 payable on demand with interest payable quarterly in advance and an agreement that a payment of $200 would be made on the principal on May 1st, 1930, and every month thereafter until the note was paid in full. The note was secured by a third mortgage upon property in Bristol, the two prior mortgages upon which were also held by the Trust Company. All three mortgages were assigned to the plaintiff. The defendant

Vincent Broderick and two others signed a guaranty of this note which read as follows: "We hereby guarantee the payment of the within note." The defendant Margaret Duffy and Julia Place (who is not a defendant) each signed a separate guaranty which read in part as follows: "I hereby guarantee the payment of the principal sum of said mortgage when the same comes due; but I am not to be liable under this guarantee for a larger amount than three thousand ($3,000) dollars." Payments of $200 each were made on the principal of the note up to August 22d, 1931, reducing the principal amount due to $4000, and interest was paid up to March 1st, 1932. In July, 1933, Mary Broderick was adjudged bankrupt. Demand for payment of the note was made on all parties prior to the bankruptcy. On August 10th, 1933, Frederick W. Place bought the property subject to these mortgages from the trustee in bankruptcy. In February, 1935, the plaintiff brought suit against Place to foreclose the two prior mortgages, and against the guarantors of the note secured by the third mortgage. The foreclosure action went into judgment March 15th, 1935, the amount of the debt being found to be $12,458.54 and the property appraised at $10,500. The plaintiff secured judgment against the defendant Vincent Broderick and two other guarantors for $4250, the balance due on the note, and against the defendant Margaret Duffy for $3000, the amount of her guaranty. These defendants have appealed claiming that they are released from liability upon their respective guaranties by reason of material alterations in the contract the performance of which they guaranteed.

They claim to be relieved of liability as the result of an agreement entered into between the plaintiff and Place, at the time the latter bought from the trustee in bankruptcy the equity in the property which was

subject to the mortgage securing the note which they guaranteed. In this agreement Place agreed to pay the plaintiff $100 per month to be applied by it to the payment of interest and back taxes and other liens on the property, and the plaintiff agreed to allow its mortgages to remain on the property until September 1st, 1934, and not to demand any payment of principal, provided Place should not be in default for more than fifteen days in his monthly payments, and further agreed to waive all back interest on any of the mortgages and to assume all back insurance premiums. The defendants contend that by this agreement the plaintiff substituted Place in the stead of Mary Broderick as mortgagor, renewed the mortgage for a different period of time and upon different terms and conditions, and that it follows that they are relieved of their obligations under the well settled rule that any material change in the obligations and duty of the principal, made without the consent of the guarantor, relieves the latter of any liability upon his guaranty. But Mary Broderick, the maker of the note which defendants guaranteed, was not a party to this agreement between the plaintiff and Place. It was not a substitute for the agreement contained in her note which the defendants guaranteed. So far as appears she remained still liable upon that agreement except as she may have received a discharge in her bankruptcy proceedings. The plaintiff was entitled to bring suit against her on the note in disregard of the mortgage. *Calamita* v. *DePonte,* 122 Conn. 20, 26, 187 Atl. 129. Her liability was not affected by the act of the plaintiff in entering into this agreement with Place, the purchaser from her trustee in bankruptcy. That agreement had relation only to the mortgage security, being an agreement with Place that, if he purchased the property subject to the three mortgages, the plaintiff

would allow the mortgages to remain until September 1st, 1934, provided he made the payments therein provided for. It had no relation to the obligation of the guarantors of the note and could not have the effect of discharging them from such obligation.

Any claim of the defendants that the agreement with Place impaired the security of the third mortgage which they were entitled to have preserved as the primary resource for the payment of the note, and that they should be discharged to the extent of such impairment, would not avail them, since the court has found that the mortgage was never of any value as security. They were not, as they claimed, necessary parties to the action against Place for the foreclosure of the two prior mortgages, and plaintiff's failure to make them parties would not bar its present right of action by reason of the provisions of General Statutes, § 5080, that the foreclosure of a mortgage shall bar any further action upon the mortgage debt unless the persons liable therefor are made parties to the foreclosure. They were not liable for the mortgage debts of the mortgages which were foreclosed.

The defendants further claim to be relieved of liability as the result of an agreement contained in a letter written by counsel for the plaintiff to each of the guarantors on June 20th, 1933, which reads as follows: "You guaranteed the payment of the note of Mary Broderick to The Bristol Trust Company, dated March 31, 1930, for $6,000.00. We have previously written you demanding that this mortgage be paid. Subject to your approval we have agreed to accept payment of five (5) dollars per week from Vincent Broderick, one of the guarantors, and to refrain from pressing any further action until such time as business improves (this decision to be entirely within the discretion of The Bristol Bank & Trust Company, the

present owner of the note) and as long as said weekly payments are promptly made. It must be distinctly understood that this in no way releases you from your guarantee and if we do not receive your approval of this arrangement it may be necessary to commence action in order to protect the bank. Please let us hear from you within the next few days." Pursuant to this arrangement Vincent Broderick made two payments of $5 each on June 20th and July 8th, 1933. Mary Broderick was not a party to this agreement. She was adjudged bankrupt very shortly after the letter was written, and it is apparent that the "further action" which the plaintiff agreed to refrain from taking so long as the weekly payments were promptly made, refers to action against the guarantors to whom the letter was addressed. This was not, as defendants claim, a substituted agreement extinguishing the original contract between the plaintiff and Mary Broderick, and they are not, as the result of it, discharged from liability upon their guaranty on the ground of a material alteration in the contract whose performance they guaranteed.

A guarantor, as between himself and his co-guarantors, is a principal for the portion of the debt which he ought to pay and is a surety for the remainder, and if one co-guarantor is compelled to make good upon his guaranty he has a right of contribution against his co-guarantors. It has been held that an agreement between the creditor and one co-guarantor by which the latter is granted an extension of time within which to pay the debt will discharge the other guarantor to the extent that he has suffered loss by being deprived of his right of contribution from his co-guarantor to whom the extension was granted; *Ide* v. *Churchill,* 14 Ohio St. 372; *Gosserand* v. *LaCour,* 8 La. Ann. 75; though there are authorities to the contrary. *Draper*

v. *Weld*, 79 Mass. (13 Gray) 580; *Sherman County* v. *Nichols*, 65 Neb. 250, 91 N. W. 198.

The letter to the guarantors, however, states that the plaintiff's agreement to refrain from action so long as the weekly payments are promptly made is made upon the distinct understanding that such action in no way releases the guarantors from liability upon their guaranty. This constituted notice to them that their liability was to continue, and that they were not released from their obligation to pay the note. Stearns, Suretyship (3d Ed.) § 114. "A creditor who discharges one co-surety either in full or in part may reserve his right against a co-surety either for the entire claim, or for the portion equitably due from such co-surety." 4 Williston, Contracts (Revised Ed. 1936) § 1263, p. 3616; *Hood* v. *Hayward*, 124 N. Y. 1, 26 N. E. 331; *Deering* v. *Moore*, 86 Me. 181, 29 Atl. 988; *Brown* v. *Pacific Coast Agency*, 53 Cal. App. 788, 200 Pac. 977. The agreement for extension of time, even if otherwise binding upon the plaintiff, would not, in view of this stipulation, discharge the guarantors from liability upon their guaranty.

In the agreement between the plaintiff and Frederick J. Place the latter is referred to as "a guarantor up to $3,000 on one of said mortgages." Whether or not this was the third mortgage given as security for the note here in question does not appear. Julia Place was a guarantor of that mortgage up to $3000. Upon this record it does not appear that the defendants were deprived of any right of contribution from their coguarantors as the result of this agreement between the plaintiff and Place.

There is no error.

In this opinion the other judges concurred.